[Cite as *State v. Callahan*, 2012-Ohio-1092.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                       :
                                                                                C.A. CASE NO. 24595

v.                                               :

                                                 :                              T.C. NO. 10CR2027

CLIFTON C. CALLAHAN                              :        (Criminal appeal from
                                                          Common Pleas Court)
    Defendant-Appellant                      :

                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    16th    day of     March    , 2012.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. No. 0034517, 135 W. Dorothy Lane, Suite 209, Kettering, Ohio 45429
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Clifton Callahan was found guilty by a jury of one count of aggravated burglary, and he was sentenced to eight years in prison. He appeals from his conviction.

{¶ 2} Callahan was indicted for one count of aggravated burglary, which was alleged to have occurred in June 2010. The indictment alleged that Callahan had trespassed by force in his former girlfriend's apartment and had assaulted her new boyfriend, Frederick Conner. Callahan pled not guilty and filed a motion to suppress his statements to police officers. The trial court conducted a hearing on this motion. The trial court denied the motion to suppress with respect to unsolicited statements made by Callahan to the police at the apartment building, and the court granted the motion to suppress with respect to a written statement that Callahan made at the police station without having been informed of his *Miranda* rights. Callahan does not challenge the trial court's ruling on his motion to suppress.

{¶ 3} At trial, the State presented evidence that Callahan went uninvited to the apartment of his former girlfriend, Wanda Greene, on June 29, 2010, broke down the door, slapped Greene, and wrestled with and bit her new boyfriend. Callahan claimed that Greene asked him to come to the apartment, that he believed she was being held in the apartment against her will, and that he broke into the apartment out of concern for her safety.

{¶ 4} The indictment listed Conner, Greene's new boyfriend, as the victim of the assault underlying the aggravated burglary. During the trial, the State asked

to amend the indictment to reflect that the victim(s) had been Conner and/or Greene. The trial court denied the State's request to amend the indictment. Callahan's request for a jury instruction on the lesser included offense of burglary was also denied.

{¶ 5}    Callahan was found guilty by a jury of aggravated burglary. He was sentenced to eight years of imprisonment and was ordered to pay restitution in the amount of $105.87.

{¶ 6}    Callahan appeals from his conviction, raising three assignments of error. We begin our discussion with the second and third assignments.

{¶ 7}  Callahan's second and third assignments of error state:

THE APPELLANT'S CONVICTION WAS AGAINST THE

MANIFEST WEIGHT OF THE EVIDENCE.

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE

APPELLANT'S CONVICTION.

{¶ 8}    Callahan contends that the jury should have believed his "credible evidence" that he was invited to Greene's apartment and went there because he was concerned for her safety. He further contends that, because he presented evidence that he had been invited to the apartment, there was insufficient evidence that he had committed a trespass. Additionally, Callahan claims that any injury to Conner resulted from Callahan's self-defense and that there was insufficient evidence that he inflicted or attempted to inflict physical harm on Conner.

{¶ 9}    An argument based on the sufficiency of the evidence challenges whether the State presented adequate evidence on each element of the offense

to allow the case to go to the jury or to sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1999). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 10} In contrast, when reviewing a judgment under a manifest weight standard of review, the court "'review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins at 387, quoting State v. Martin, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 11} The State presented the following evidence at Callahan's trial:

{¶ 12} Wanda Greene testified that she and Callahan had dated in the past and both were veterans of the military. They had lived in several cities together, including Columbus, Ohio, where they lived in 2009. Both received treatment through the Veterans Administration.

{¶ 13} Greene testified that she broke off her relationship with

Callahan in December 2009 and moved to Dayton, where she resided and received treatment at the VA facility. Thereafter, Callahan also moved to the Dayton VA facility. Greene and Callahan were housed in different sections, but Greene obtained a restraining order against Callahan.

{¶ 14} In early 2010, Greene became romantically involved with Conner, who was also a veteran. In June, Greene and Conner moved into an apartment at 110 Imperial Court in Vandalia. Greene testified that she did not give Callahan her new address.

{¶ 15} On June 29, 2010, Conner and Greene were resting at their apartment, and Greene was recovering from recent surgery. At approximately 6:15 p.m., they both heard a loud banging at one of their windows and then at the front door, and Greene heard her name being called. According to Greene, Callahan "kicked the door in" and slapped her twice in the face, knocking her to the floor. He also said, "who is this N here?"

{¶ 16} Conner testified that he immediately called 911, while Greene moved toward the door. As Conner came out of the bedroom a moment later, he "heard a couple of smacks," heard Greene scream, and saw Greene on the floor and Callahan at the front door of their apartment. Conner charged toward Callahan, hit him a couple of times, and "got to wrestling" with him. According to Conner, Callahan bit Conner on the arm and scratched him. The police arrived a short time later.

{¶ 17} The officers who responded to the apartment found the door frame "split" and "the door latch was laying in the hallway," both of which indicated to

them a forced entry. The two men who were struggling inside the door of the apartment were blocking the officers' entrance, and Greene was yelling. The officers quickly separated the men.

{¶ 18} The officers testified that Greene reported having been slapped two times in the face by Callahan, but they did not observe any injuries on Greene; they did observe injuries, including bite marks, on Conner's arm and collarbone. Conner testified that Greene's face was red from being "smacked," he testified about his own injuries, and he identified for the jury photographs taken of his arm and shoulder injuries.

{¶ 19} One of the officers who responded to the apartment, Sergeant Gary Jackson, testified that Callahan had approached him earlier in the evening to ask directions to Imperial Court. At that time, Callahan had seemed calm and did not mention any emergency.

{¶ 20} Callahan also testified at trial. He stated that his romantic relationship with Greene had continued when she moved to Dayton and that they were engaged at the time of the alleged offense. He testified that he talked with Greene early in the day on June 29, 2010, at the VA Hospital, where they were both receiving treatment; she told him about her new apartment and gave him her address. He claimed that, later in the day, he received a call from Greene in which she was crying hysterically and stated that she was unable to leave the apartment; she asked him to come to the apartment. Callahan was concerned about Greene because she "ha[d] a problem with her bipolar." At the time, he did not believe that "somebody was bothering" Greene. Nonetheless, he got bus tokens from his social worker and took a bus to Vandalia. Once there, he asked

Sergeant Jackson for directions to the apartment. Because he did not want to "make false accusations" or create a panic, he did not tell Jackson about the phone call from Greene before proceeding to the apartment.

{¶ 21} Callahan further testified that, when he knocked on the door of the apartment, Greene opened it, but Conner quickly slammed the door and locked it. He stated that he had never seen Conner before, that Greene seemed nervous and upset, and that Conner seemed to be fastening his pants as he walked toward the open door. Callahan then "panicked and * * * kicked the door," which led to an altercation with Conner. Callahan denied ever hitting Greene and did not remember inflicting any specific injuries, such as reflected by the bite marks, during his altercation with Conner.

{¶ 22} Callahan was cross-examined about inconsistences between his statement to the police on June 29, 2010, and his testimony at trial. He was also cross-examined about a statement he is heard making on the 911 tapes, asking Greene what she was "doing here with this n****r."[1]

{¶ 23} Callahan was charged with aggravated burglary pursuant to R.C. 2911.11(A)(1), which states:

(A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:(1) The offender inflicts, or attempts or threatens to

---

[1] Because our opinions are widely available online, we have chosen to insert asterisks into certain offensive words that appear in the transcript of this case and in other cases.

inflict physical harm on another[.]

{¶ 24}     Although Callahan testified that Greene had called him to her apartment, Greene refuted this claim.   Greene denied that she had invited him or provided him with her new address; she also denied that she was still in a relationship with Callahan or that she had opened the door to him.   The police officers testified to physical evidence of forced entry.    This evidence was sufficient to support the jury's verdict that Callahan had trespassed when he entered Greene's apartment.

{¶ 25}     Callahan also claims, based on his version of events, that there was insufficient evidence that he inflicted or attempted to inflict physical harm on Conner; in the alternative, he asserts that any harm inflicted on Conner was justified through self-defense.   However, the jury was not required to credit Callahan's testimony that he came to the apartment to protect Greene.   Other evidence suggested that Callahan did not act in self-defense and that Conner was not the instigator of the attack.   Callahan had the burden of proof on self-defense, and the jury was instructed on that issue, but it apparently did not credit Callahan's testimony.   Further, Conner and one of the police officers testified that Conner suffered injuries on his right arm and left collarbone, including bite marks and scratches, as a result of the altercation.   Thus, there was sufficient evidence from which the jury could have concluded that Callahan inflicted physical harm and did not act in self-defense.

{¶ 26}     Callahan also argues that his conviction was against the manifest weight of the evidence.   The parties presented different versions of the events of June 29, 2010, the status of Greene and Callahan's relationship at that time, and

Callahan's purpose in going to Greene's apartment.   The credibility of the witnesses and the weight to be given to the witnesses's testimony were matters for the jury to determine. The jury did not lose its way simply because it chose to believe the State's version of the events, which it had a right to do.   Although Callahan testified that he had been concerned for Greene's safety and had reacted to a plea for help from her, the evidence allowed a reasonable jury to conclude that Callahan had not been called to the apartment and was not acting to protect Greene.   Reviewing the record as a whole, we cannot say that the evidence weighed heavily against Callahan's conviction, that the jury lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice occurred.

{¶ 27} Callahan's second and third assignments of error are overruled.

{¶ 28}        Callahan's first assignment of error states:

{¶ 29} THE COURT ERRED WHEN IT REFUSED TO GIVE A JURY INSTRUCTION ON A LESSER INCLUDED OFFENSE OF AGGRAVATED BURGLARY.

{¶ 30}        Callahan claims that he was entitled to an instruction on the lesser included offense of burglary, and that the trial court erred in refusing to give this instruction.

{¶ 31}        "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, * * * be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to

prove the commission of the lesser offense." *State v. Deem*, 40 Ohio St.3d 205, 206, 533 N.E.2d 294   (1988), paragraph three of the syllabus, as modified by *State v. Evans,* 122 Ohio St.3d 381, 387, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 26; *State v. Hipshire*, 2d Dist. Darke No. 2010-CA-07, 2010-Ohio-3863, ¶ 23.

{¶ 32}    The State acknowledges in its brief that burglary is a lesser included offense of aggravated burglary.   The State argues, however, that the trial court did not abuse its discretion by failing to give the burglary instruction, because the evidence justified the court's decision.

{¶ 33}    "If the evidence is such that a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense, then the judge should instruct the jury on the lesser offense."  *Shaker Hts. v. Mosely,* 113 Ohio St.3d 329, 333, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 11, citing *State v. Shane*, 63 Ohio St.3d 630, 590 N.E.2d 272 (1992); *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 192.   In deciding whether to instruct the jury on a lesser included offense, the trial court must view the evidence in a light most favorable to the defendant. *Trimble* at ¶ 192.   "The lesser-included-offense instruction is not warranted every time 'some evidence' is presented to support the lesser offense. * * * Rather, a court must find 'sufficient evidence' to 'allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense.'" (Emphasis sic.)   *Id.*, quoting *Shane* at 632-633; *Hipshire* at ¶ 40.

{¶ 34}    When reviewing a trial court's jury instructions, an appellate court must determine whether the trial court's refusal to give a requested jury instruction

constituted an abuse of discretion under the facts and circumstances of the case. State v. Wolons , 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989); State v. Collier, 2d Dist. Montgomery No. 20131, 2005-Ohio-119, ¶ 25. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 35} The difference between burglary (R.C. 2911.12(B)) and aggravated burglary (R.C. 2911.11(A)) is the purpose to commit any criminal offense (in this case, assault) and the infliction of physical harm; both offenses contain the element of trespass. Callahan's defense was primarily based on his assertion that he did not trespass at Greene's apartment, but rather was invited there by Greene. If the jury believed Callahan's version of events, it could not have reasonably convicted him of burglary *or* aggravated burglary, because there was no trespass.

{¶ 36} Callahan also claims that the jury could have concluded that he did not assault Conner, and therefore committed burglary rather than aggravated burglary. However, both Conner and one of the police officers testified that Conner had been injured. Conner further testified that he went to the VA hospital, where his injuries were treated and he was given a shot. Callahan did not rebut the State's assertion that Conner had suffered physical harm, and Callahan did not deny inflicting the injuries. Rather, he testified that he "may have" bit Conner in the "tussling" but "wasn't aware" of it. Under these circumstances, the trial court did not abuse its discretion in refusing to instruct the jury on the lesser included offense of burglary.

{¶ 37} The first assignment of error is overruled.

**{¶ 38}** The judgment of the trial court will be affirmed.

. . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Andrew T. French
William O. Cass, Jr.
Hon. Frances E. McGee