[Cite as *State v. Frazier*, 2016-Ohio-727.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NOS. 26495 and 26496 |
| | : | |
| v. | : | T.C. NOS. 13CR3864 and 13CR3946 |
| | : | |
| DARELLE A. FRAZIER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the _____26th_____ day of _____February_____, 2016.

. . . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
          Attorney for Plaintiff-Appellee

BROCK A. SCHOENLEIN, Atty. Reg. No. 0084707, 371 West First Street, Dayton, Ohio 45402
          Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Darelle Frazier appeals from his conviction, after a jury trial, for robbery in

Montgomery C.P. No. 2013-CR-3864 and his conviction upon his guilty plea to having weapons while under disability in Montgomery C.P. No. 2013-CR-3946.

{¶ 2} Frazier's convictions stem from two separate incidents on different dates. The cases have significantly different procedural histories and present distinct legal issues. Frazier raises nine assignments, seven of which relate to his robbery conviction and two of which relate to his conviction for having weapons while under disability. In the interest of clarity, we will address the two cases and their respective assignments of error separately.

{¶ 3} For the following reasons, the trial court's judgments will be affirmed.

## I. Case No. 2013-CR-3864 (Robbery)

### A. Factual and Procedural History

{¶ 4} The State's evidence at trial established the following facts:

{¶ 5} During the afternoon of November 25, 2013, Frazier boarded an RTA bus headed northbound toward Vandalia. When a seat opened in the back of the bus, Frazier sat in a seat next to Jesse Goble, a regular passenger on that route. Goble had an electronic cigarette in his hand. Frazier grabbed the e-cigarette from Goble, without permission, and asked Goble about its use. Initially, Goble answered Frazier's questions, believing that Frazier would return it. After Frazier asked how to clean the e-cigarette, Goble repeatedly asked Frazier to give him the e-cigarette. Frazier refused to return it.

{¶ 6} After several requests for Frazier to return his property, Goble moved to the row of seats across from Frazier and continued to ask Frazier to return the e-cigarette.

Frazier did not return it. When Frazier was about to exit the bus, Frazier responded to Goble that Goble would need to fight him (Frazier) for the e-cigarette. Frazier lunged at Goble, who was still seated, knocking Goble on his back across the seats. Frazier punched Goble in the face several times.

{¶ 7} Individuals on the bus yelled that a fight was occurring, and the bus driver, Salvatore Leone, hit the "panic button." Leone notified the RTA dispatcher about the fight, and the dispatcher contacted the police. The assault lasted for about a minute, during which Goble repeatedly yelled, "Give me my stuff back." Passengers pulled Frazier off of Goble. Frazier exited the bus and left the scene. Goble remained until the police arrived. Goble provided a statement to the responding sheriff's deputy, and the deputy took photographs of Goble's face, which had cuts and red marks.

{¶ 8} Two days later (November 27), Frazier rode another RTA bus that Leone was driving southbound toward downtown Dayton. Leone recognized Frazier "right away" as the individual who had assaulted Goble. A few minutes after Frazier boarded, Leone notified his dispatcher that Frazier was on the bus. RTA arranged to have the police meet the bus at the downtown hub, where Leone's shift was ending. The police were not there when the bus arrived, and Leone pointed out Frazier to his supervisor. Leone took his bus, which was now empty, to the RTA garage. Afterward, he returned in his personal vehicle to the downtown hub and saw Frazier in the back of a police cruiser.

{¶ 9} Leone testified that Frazier had "tattoos all over his face," which were "very distinguishing features," that Frazier had been cursing when he boarded the bus on November 25, and Frazier "challenged" Leone when Leone told Frazier to "stop cussing

and that he's going to have to get off the bus." Leone stated that he was 100 percent certain that Frazier was the individual he saw punching Goble.

{¶ 10} On December 5, 2013, the police showed a photo array with six photographs, including one of Frazier, to Goble. Goble identified Frazier as the individual who had taken his e-cigarette and assaulted him. Goble stated that he was 75 percent certain of the identification. At trial, Goble again identified Frazier and testified that he was 85 percent certain of the identification.

{¶ 11} In February 2014, Frazier was indicted for robbery, in violation of R.C. 2911.02(A)(2), for the November 25, 2013 incident. Frazier subsequently moved to suppress the photographic identification by Goble on the ground that the photo line-up was impermissibly suggestive and/or the identification was unreliable.

{¶ 12} A hearing on the suppression motion was held on April 11, 2014. The State presented two witnesses regarding the pretrial identification; Frazier presented no witnesses. After a short recess to review the exhibits and the law, the trial court orally overruled the motion to suppress regarding Goble's identification. The court's written entry overruling the motion to suppress cited the reasons articulated at the hearing.

{¶ 13} The robbery case proceeded to a jury trial in September 2014, and evidence was presented regarding the events of November 25 and 27 and December 5, as described above. After deliberations, the jury found Frazier guilty of robbery, as alleged in the indictment. The trial court sentenced Frazier to eight years for the robbery and ordered him to pay restitution of $103 to Goble and court costs. The sentence was run concurrently with the sentence in Case No. 2013-CR-3946.

{¶ 14} Frazier appeals, raising seven assignments of error related to his robbery

conviction.

### *B. Pretrial Identification*

{¶ 15} Frazier's first assignment of error states: "The trial court erred in overruling Appellant's motion to suppress the pretrial identification in the robbery case."

{¶ 16} "Due process requires suppression of pre-trial identification of a suspect only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Neil v. Biggers*, 409 U.S. 188, 196-97, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

{¶ 17} The defendant must first show that the identification procedure was unduly suggestive. "A lineup is unduly suggestive if it steers the witness to one suspect, independent of the witness's honest recollection." (Citations omitted.) *State v. Adams*, 2015-Ohio-3954, __ N.E.3d __, ¶ 208 (Ohio). If the pretrial identification procedure was not unfairly suggestive, any remaining questions as to the identification's reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. *Id.* at ¶ 209; *State v. Williams*, 2d Dist. Montgomery No. 26357, 2015-Ohio-1403, ¶ 13.

{¶ 18} If, on the other hand, the defendant shows that the pretrial identification procedure was unduly suggestive, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure. *Id.* In reviewing the likelihood that the circumstances resulted in a misidentification, courts consider the opportunity of the witness to view the perpetrator at the time of the offense, the witness's degree of attention, the accuracy of the witness's prior description of the perpetrator, the level of certainty demonstrated by the witness at

the confrontation, and the length of time between the crime and the confrontation.[1]  *Neil* at 199-200; *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *State v. Chaffin*, 2d Dist. Montgomery No. 25220, 2014-Ohio-2671, ¶ 16.

{¶ 19} Reliability of the pretrial identification is the linchpin in determining its admissibility.  *Manson* at 114.  "So long as the identification possesses sufficient aspects of reliability, there is no violation of due process."  *State v. Sherls*, 2d Dist. Montgomery No. 18599, 2002 WL 254144, *3 (Feb. 22, 2002).

{¶ 20} We review a trial court's refusal to suppress a pretrial identification for an abuse of discretion.  *State v. Wilson*, 2d Dist. Montgomery No. 22624, 2009-Ohio-1038, ¶ 19.

{¶ 21} Deputy Phelps-Powers and Detective Gallagher testified at the suppression

---

[1] In the more than 40 years since *Neil* and *Manson*, substantial research has been conducted on memory and eyewitness identification.   In the view of this author, and as other judges have recognized, "[t]his research has demonstrated beyond question that the reliability of eyewitness testimony is not limited to external factors or even to individual matters such as the quality of a witness's eyesight.   For better or for worse, much of what these studies have revealed is highly inconsistent with our intuition about how memory functions. * * * Contrary to our intuition, neuroscience and cognitive studies demonstrate that what is stored in a person's memory can be changed over time, particularly where there are repeated retrieval attempts as a result of prompting. The gaps in memory can be 'filled in' with information that is subjectively experienced as if part of the initial memory of the event."  *Michigan v. Blevins*, __ N.W.2d __, 2016 WL 594098 (Mich.Ct.App. Feb. 11, 2016) (Shapiro, J., dissenting).

Several factors identified in *Neil* may bear reconsideration in light of the significant advancement of scientific understanding of memory.  For example, *Neil* and *Manson* direct courts to consider the witness's degree of certainty in the identification.   Yet studies have repeatedly shown little relationship between certainty and accuracy.

Nevertheless, as an intermediate court of appeals, we must continue to cite the factors articulated in *Neil* and *Manson*, as required by Ohio Supreme Court precedent. *See State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 25 (considering the *Manson* factors in determining reliability of identification); *State v. Keith*, 79 Ohio St.3d 514, 684 N.E.2d 47 (1997).

hearing. According to Deputy Phelps-Powers, on December 5, 2013, she presented a six-photo line-up prepared by Detective Gallagher to Goble. The deputy read instructions to Goble prior to showing him the photo array, and she did not know who the suspect was. After looking at all the photos, Goble had stated, "I see the person," and Phelps-Powers asked Goble to circle the photo and put his initials inside the photo. Goble selected Frazier's photograph. Goble told the deputy that he was 75 percent certain of the identification. Phelps-Powers filled out the portion of the form indicating that she was the blind administrator of the line-up.

{¶ 22} Detective Gallagher testified that he compiled the photo line-up shown to Goble. He used a computer-generated program called Justice Web, in which he enters a suspect's information, including social security number, and the program finds the suspect's photograph. The program generates a compilation of similar photographs based on the suspect's photograph. Gallagher stated that, after entering Frazier's information, he picked five photos from those compiled by Justice Web.

{¶ 23} During his testimony, Gallagher agreed that Frazier had "distinctive facial markings," including tattoos on his face and neck. He stated that he took that into consideration when selecting the five additional photographs and tried to select individuals with facial tattoos. One individual (other than Frazier) had a small facial tattoo, and five of the individuals had large tattoos on their necks. Gallagher testified that Goble had not mentioned facial tattoos when he described the perpetrator to the responding officer on November 25.

{¶ 24} Detective Gallagher testified that he did not give any information about the case to Deputy Phelps-Powers, he did not talk to Goble about the photo line-up or the

suspect, and he was not in the room when the deputy showed the line-up to Goble.

{¶ 25} In overruling Frazier's motion to suppress, the court found that the photo array was comprised of individuals of similar age, race, and hairstyle, and each had some degree of facial hair; the photos had similar backgrounds. The court noted that the line-up was computer-generated. The court further found significant that the photo line-up was presented by a blind administrator, that Detective Gallagher was not present in the room, and that the deputy had read verbatim the photospread instructions, which included, "This group of photographs may or may not contain a picture of the person who committed the crime now being investigated."

{¶ 26} The trial court addressed the tattoos on Frazier's face. It noted that the individual in photo #2 had a tattoo between his eyes, although it was not as prominent as Frazier's tattoos, and five of the six individuals had tattoos on their necks. The court found significant that Detective Gallagher had used the presence of tattoos as a characteristic in creating the photo array. The court stated that it would be "unreasonable to expect law enforcement, in a situation like this where an individual has tattoos over the entire face," to find photographs of other individuals with tattoos over their entire faces. The court also found "critical" that Goble had not conveyed to any officer that Frazier's tattoos were a crucial identifying characteristic. The court concluded that the photo array was not unduly suggestive when viewed either as a whole or in the manner it was presented.

{¶ 27} We have reviewed the evidence from the suppression hearing, including the photo array, and we agree with the trial court that the identification procedure was not unduly suggestive. The photographs were presented by a blind administrator, and Goble

was notified that his assailant's photograph may not be present and that some features, such as hair style, might be different. There is nothing in the manner in which the deputy presented the array to Goble that would make the presentation unduly suggestive.

{¶ 28} As to the array itself, the array was computer-generated, using characteristics similar to Frazier, including the presence of tattoos. Five of the six photographs have a similarly-colored background and include men of similar age and complexion. The one man who was older, had a slightly darker complexion, and was pictured on a darker background was not Frazier. A different man (not Frazier) had a short hairstyle that was different from Frazier's. Five of the six men, including Frazier, had substantial tattoos on their necks; one man, in addition to Frazier, had a small tattoo on his face.

{¶ 29} Frazier's photograph showed that he had tattoos on and above his eyebrows and along the left side of his face. However, some of the tattoos appeared to blend with his eyebrows, and the pattern was difficult to discern. Although the presence of Frazier's facial tattoos may have been somewhat distinctive, there was nothing in the make-up of the photo array that steered Goble to select Frazier's photograph, independent of Goble's honest recollection.

{¶ 30} Frazier's first assignment of error is overruled.

### C. Sufficient and Manifest Weight of the Evidence

{¶ 31} Frazier's fifth and sixth assignments of error claim that the trial court "erred in overruling Appellant's Rule 29 motion at trial" and that his "robbery conviction was entered against the manifest weight of the evidence."

{¶ 32} When reviewing the denial of a Crim.R. 29(A) motion, an appellate court

applies the same standard as is used to review a sufficiency of the evidence claim. *State v. Sheppeard*, 2d Dist. Clark No. 2012 CA 27, 2013-Ohio-812, ¶ 51. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 33} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 (" 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 34} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the

evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 35} R.C. 2911.02, the robbery statute, provides:

(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control;

(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;

(3) Use or threaten the immediate use of force against another.

A violation of R.C. 2911.02(A)(1) or (2) is a second-degree felony. R.C. 2911.02(B). A violation of R.C. 2911.02(A)(3) is a third-degree felony. *Id.*

{¶ 36} On appeal, Frazier claims that the State failed to present sufficient evidence that he inflicted physical harm as part of or immediately after the theft offense and, in the absence of such evidence, his conviction was against the manifest weight of the evidence. Frazier states that the actual taking of the property (theft offense) must be committed "simultaneously" with the infliction of physical harm.[2] He argues that, based on the surveillance video on the RTA bus, the physical altercation must have occurred at least two to three minutes after he allegedly took Goble's electronic cigarette, and that

---

[2] Frazier's appellate brief repeatedly states that the theft must be contemporaneous with the threat or use of force. However, as Frazier was charged under R.C. 2911.02(A)(2), we infer that he means contemporaneous with the infliction of physical harm, attempt to inflict physical harm, or threat to inflict physical harm. In either case, the temporal requirement is the same.

there is no evidence that he inflicted physical harm at the time he took the e-cigarette.

{¶ 37} The Supreme Court of Ohio has explained that the force or physical harm attendant to the theft offense does not need to be inflicted in furtherance of a purpose to deprive another of property. *State v. Thomas*, 106 Ohio St.3d 133, 2005-Ohio-4106, 832 N.E.2d 1190, ¶ 13. Focusing on the phrase "or in fleeing immediately after the attempt or offense," the supreme court noted that neither "fleeing" nor "immediately" is defined by the Ohio Revised Code. *Thomas* at ¶ 15. The supreme court defined "to flee" as " '[t]o run away from,' 'to try to escape,' '[t]o hasten for safety,' or '[t]o withdraw hastily.' " *Id.*, quoting V Oxford English Dictionary (2d Ed.1989) 1037. The Court further defined "immediately" as " '[w]ith no person, thing, or distance, intervening in time, space, order, or succession,' or '[w]ithout any delay or lapse of time.' " *Id.*, quoting at VII Oxford English Dictionary (2d Ed.1989) 682.

{¶ 38} Whether force was used as part of or while fleeing immediately after a theft offense is fact-specific. *Thomas* at ¶ 16. In *Thomas*, the defendant left a grocery store with two bags of merchandise that he had not paid for. Soon after leaving the store, the defendant dropped the bags and continued walking away from the store. A uniformed off-duty police officer, who provided security for the grocery store, followed the defendant into a nearby laundromat. The officer approached Thomas and asked him to step outside, which Thomas did, and the two began to walk back to the grocery store. When they arrived at the front door, Thomas attempted to run away, a struggle ensued, and Thomas struck the officer in the face with his head.

{¶ 39} On review, the Ohio Supreme Court found that the physical harm to the officer did not occur in fleeing immediately after the theft. The court reasoned:

When Thomas and [the officer] neared the store, having walked together from the laundromat, Thomas was not "fleeing immediately" after a theft. There was a delay or lapse of time between the theft offense and the attempt to flee, so that Thomas's actions upon his return with [the officer] to the store's front door were not "immediately after" the theft offense within the meaning of R.C. 2911.02(A). * * * Had Thomas struggled with [the officer] in an attempt to flee immediately after Thomas left the store, or after he dropped the stolen goods, or after being forced by [the officer] to return to the store, then an ensuing injury, attempt to injure, or threat to injure might justify elevation of the offense from theft to robbery. Based on the facts in the record, however, when the struggle that caused the harm occurred, Thomas was no longer "fleeing immediately after" the theft.

*Thomas* at ¶ 16.

{¶ 40} In the case before us, Goble testified that Frazier took his (Goble's) electronic cigarette while Frazier was seated next to him on the RTA bus. After Frazier asked Goble how to clean the e-cigarette, Goble became concerned that Frazier would not return the e-cigarette, and Goble repeatedly asked Frazier to return it. Frazier never returned Goble's property, and when Frazier stood up to leave the bus (while still in possession of Goble's property), he physically assaulted Goble.

{¶ 41} The surveillance video began at 2:46:54 p.m., when Goble and Frazier were both already seated in the rear deck of the bus. Frazier's hands appear to be empty, but the jury could have reasonably inferred from Goble's testimony that Frazier had already taken the e-cigarette. Frazier's gaze was directly toward the front of the bus on his left,

not toward Goble, who was seated to Frazier's right. On a few occasions over the next minute, Goble appears to say something to Frazier, although his statements are not audible. At about 2:49:00, Frazier pulled the cord to indicate that he wanted to exit at the next bus stop, and at 2:49:07, Goble moved to the seat across from Frazier. Goble spoke to Frazier. At 2:49:10, Frazier stood up and lunged at Goble, beginning the assault. The bus stopped and opened its doors at 2:49:19. About 2:49:55, while the assault was ongoing, Goble shouted three times, "Give me my stuff back."

{¶ 42} Construing the evidence in the light most favorable to the State, the evidence reflects that Frazier was committing the theft offense at the time of the assault. The theft took place on a public bus, and Frazier was continuing to refuse Goble's requests to return his property when the assault occurred. Even if we were to assume that Frazier had completed the theft offense, Frazier continued to sit across from Goble until he (Frazier) was about to leave the bus, and the assault occurred within minutes of the theft, when Frazier got up to leave with Goble's property. In such case, the jury could have reasonably found that Frazier assaulted Goble in fleeing immediately after the theft offense. Frazier's conviction was neither based on the insufficient evidence nor against the manifest weight of the evidence.

{¶ 43} Frazier's fifth and sixth assignments of error are overruled.

### D. Ineffective Assistance of Counsel

{¶ 44} Frazier's second and eighth assignments of error claim that he received ineffective assistance of counsel. In his second assignment of error, he asserts that his counsel acted deficiently by failing "to present evidence of a lack of reliability in the pretrial identification" at the suppression hearing. His eighth assignment of error asserts that

counsel was deficient when he "failed to object to incorrect instructions of law made by the prosecutor to the jury in closing argument."

**{¶ 45}** To establish ineffective assistance of counsel, Frazier must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of his trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Rucker*, 2d Dist. Montgomery No. 24340, 2012-Ohio-4860, ¶ 58.

**{¶ 46}** Frazier first claims that his counsel rendered ineffective assistance by failing to present evidence that Goble's pretrial identification lacked reliability. Frazier states that it was the duty of trial counsel to subpoena Goble and to present evidence regarding Goble's opportunity to view his assailant, his degree of attention, the quality of his eyesight, and the accuracy of Goble's description.

**{¶ 47}** Having concluded that the identification procedure was not unduly suggestive, the trial court did not have to reach the issue of whether Goble's identification was reliable under the totality of the circumstances. *See Adams*, 2015-Ohio-3954, at ¶ 210-211. As stated above, when the identification procedure is not unduly suggestive,

the question of reliability concerns the weight to be given to the identification, not its admissibility. *Id.* at ¶ 209 ("When the questionable circumstances of an identification procedure are not due to state action, the reliability of the identification is a question going to the weight of the testimony, not its admissibility."). Accordingly, Frazier was not prejudiced by his counsel's failure to present evidence concerning the reliability of Goble's identification at the suppression hearing.

{¶ 48} In addition, Frazier has not shown that a reasonable probability exists that the outcome of the suppression hearing would have been different had his attorney called Goble as a witness. Deputy Phelps-Powers showed the photo line-up to Goble on December 5, ten days after the incident on the bus. Assuming, for sake of argument, that Goble would have testified similarly to his testimony at trial, Goble's testimony reflected that Goble sat next to and across from Frazier for several minutes on an RTA bus during the middle of the afternoon. Goble conversed with Frazier about the e-cigarette, and after Frazier failed to return it, Goble repeatedly asked for its return. Goble stated that he moved to the seat across from Frazier so that Goble could look Frazier in the eye. Goble testified at trial that he recognized Frazier's photo during the photo line-up from "Frazier's tattoo under the eye and how his eyebrows and forehead were positioned." Goble was 75 percent certain of the pretrial identification, but the absence (or presence) of absolute certainty in the identification is not dispositive of reliability. Based on the evidence in the record, Frazier has not demonstrated a reasonable probability that Goble's pretrial identification would have been suppressed due to lack of reliability.

{¶ 49} Frazier's eighth assignment of error asserts that counsel was deficient when

he "failed to object to incorrect instructions of law made by the prosecutor to the jury in closing argument."

**{¶ 50}** After the conclusion of the evidence but prior to closing arguments, the trial court gave instructions to the jury on the presumption of innocence and the prosecutor's burden of proof, on what is/is not evidence and guidelines to determine credibility, and on the elements of the indicted charge of robbery. During these instructions, the trial court told the jury that closing arguments by counsel were not evidence and were simply designed to assist to the jury. As part of the court's instructions on the elements of robbery, the court stated: "Another essential element of robbery is that Darelle Frazier inflicted, attempted to inflict or threatened to inflict physical harm on Jesse Goble. * * * The act of inflicting or attempting to inflict or threatening to inflict physical harm must occur during or immediately after the theft offense." (Tr. at 279.)

**{¶ 51}** In the prosecutor's closing argument, the prosecutor reviewed the different elements of robbery. Addressing the physical harm element and when it must occur, the prosecutor stated:

This is the amazing one. The part about inflicting, attempt to inflict, or threaten to inflict physical harm on Jesse Goble. Let's talk about that.

All of you don't have to agree, well, he only inflicted harm on Jesse Goble or, he only attempted to inflict harm or, [h]e only threatened to inflict harm. You can choose either of them as long as you make the finding and agree that one, at least one of those three did, in fact, occur.

* * *

And let's focus on the defendant's actions while he's committing this theft

offense. While he's committing the theft offense or immediately thereafter or trying to commit the theft offense.

Just like the part about the harm, you don't necessarily have to all agree exactly when this occurred, whether the theft already occurred or trying to be accomplished or it's immediately after it. You just have to all agree that one of those three was there. You don't have to agree on which one.

**{¶ 52}** On appeal, Frazier contends that the prosecutor misstated the law when the prosecutor said that the jury did not need to unanimously agree on when the physical harm element occurred. We conclude that trial counsel was not ineffective in failing to object to the prosecutor's argument, because we find no error in the prosecutor's argument.

**{¶ 53}** "Although Crim.R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied." *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 38, citing *Richardson v. United States*, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). " ' "In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means." ' " *Gardner* at ¶ 49, quoting *State v. Jones*, 96 Haw. 161, 170, 29 P.3d 351 (2001).

**{¶ 54}** The elements of robbery permitted the jury to consider alternate methods to satisfy the physical harm requirement (i.e, inflict, attempt to inflict, or threaten to inflict) and the temporal requirement (i.e., during or in fleeing immediately after). The

prosecutor did not err in arguing that the jurors need not unanimously agree on which temporal circumstances existed, provided that they all agreed that it occurred either during the theft offense or immediately thereafter. Accordingly, defense counsel's conduct did not fall below an objective standard of reasonableness when he failed to object to the prosecutor's argument.

{¶ 55} Frazier's second and eighth assignments of error are overruled.

### E. Jury Instruction on Lesser-Included Offense

{¶ 56} Frazier's seventh assignment of error states that the trial court erred in failing to give a jury instruction on the lesser-included offense of theft.

{¶ 57} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, * * * be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." *State v. Deem*, 40 Ohio St.3d 205, 206, 533 N.E.2d 294 (1988), paragraph three of the syllabus, as modified by *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 26; *State v. Callahan*, 2d Dist. Montgomery No. 24595, 2012-Ohio-1092, ¶ 31.

{¶ 58} "If the evidence is such that a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense, then the judge should instruct the jury on the lesser offense." *Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 11, citing *State v. Shane*, 63 Ohio St.3d 630, 590 N.E.2d 272 (1992); *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 192. In deciding whether to instruct the jury on a

lesser included offense, the trial court must view the evidence in a light most favorable to the defendant. *Trimble* at ¶ 192. "The lesser-included-offense instruction is not warranted every time 'some evidence' is presented to support the lesser offense. * * * Rather, a court must find 'sufficient evidence' to 'allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense.'" (Emphasis sic.) *Id.*, quoting *Shane* at 632-633.

{¶ 59} When reviewing a trial court's jury instructions, an appellate court must determine whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989); *State v. Collier*, 2d Dist. Montgomery No. 20131, 2005-Ohio-119, ¶ 25. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 60} Frazier's counsel requested a jury instruction on the lesser-included offense of theft. Counsel argued to the trial court that the surveillance video showed a two or three minute period from when the theft actually occurred (which was not shown on the video) to when the altercation started. Counsel emphasized that the bus stopped between the time that Frazier took the electronic cigarette and when the altercation occurred, and that Frazier could have gotten off the bus earlier, but he did not.

{¶ 61} The State countered that, at the time of the assault, Goble was still asking Frazier to return his property and, therefore, the theft offense was ongoing at the time of the assault. The State argued that it would not be reasonable for the jury to acquit Frazier of robbery yet convict him of theft.

{¶ 62} The trial court overruled Frazier's request for a lesser-included offense instruction. It explained that theft constitutes not only obtaining but also exerting control over another person's property. The court noted that Goble's testimony and the video recording demonstrated that the entire incident occurred on the bus and involved continuous interaction; only a couple of minutes elapsed from the defendant's obtaining the e-cigarette and the assault on Goble. Throughout that time, Frazier continued to exercise control over the e-cigarette and Goble repeatedly demanded that he return it. The court concluded that the infliction of physical harm was contemporaneous with the theft and was "intricately connected to the theft and that enable[d] the theft to be successfully accomplished."

{¶ 63} Upon review of the law and the evidence before us, we find no abuse of discretion in the trial court's decision. The entire event occurred on the RTA bus over the course of several minutes. As demonstrated by the surveillance video, Goble repeatedly asked Frazier to return his property while both were seated near each other on the bus. Goble can be heard demanding that Frazier return his property during the assault. The trial court reasonably concluded that facts did not warrant an instruction on the lesser-included offense of theft.

{¶ 64} Frazier's seventh assignment of error is overruled.

### F. Motion for Mistrial

{¶ 65} Frazier's ninth assignment of error states: "The trial court erred when it failed to provide a record of the event that triggered Appellant's motion for a mistrial."

{¶ 66} After the jury foreperson had indicated that the jury had reached a verdict, but prior to the verdict's being read, defense counsel asked for a sidebar and moved for

a mistrial "regarding the incident that happened at lunch." The trial court overruled the motion, saying:

> Well, the motion is overruled for a couple of reasons. Reason number one is it's not a timely motion. This was brought to the attention of the state and the defense while the jury was deliberating. And the court reviewed with both defense and the state, placed – the Court placed in the record as to what happened and how this matter should be handled. Both the state and the defense were in agreement with the Court's handling of that issue. And even if the defense wasn't in agreement, there was no prejudice to the defendant because he wasn't seen in shackles or handcuffed, so there would be no miscarriage of justice that would warrant a mistrial. So, overruled, number one, because it's not timely. Number two, the defense was in complete agreement with how the Court handled this, and number three, even if the defense wasn't in agreement on the merits of this, this would simply not be a case that would have resulted in any unfair trial to the defendant or denial of due process. So motion for mistrial overruled.

{¶ 67} Frazier claims that the trial court erred in failing to detail, on the record, the event that formed the basis for the motion for a mistrial. In his appellate brief, appellate counsel states that he "has been assured that his transcript is complete."

{¶ 68} In reviewing Frazier's assignments of error, we are limited to the record before us. The trial court indicated that it had made a record of what had occurred and how the court intended to handle the incident, that it had reviewed the matter with both parties, and both parties had expressed their agreement with the trial court's handling of

the matter. Trial counsel did not object to or disagree with the court's conclusions. Based on the record before us, we can find no error in the trial court's actions.

{¶ 69} We recognize that the transcript does not include the mid-deliberation discussion between the court and counsel to which the trial court alluded. However, App.R. 9(E) provides a procedure for the correction or modification of the record. Appellate counsel did not avail himself of this opportunity to have the record supplemented to include the omitted discussion.

{¶ 70} Frazier's ninth assignment of error is overruled.

## II. Case No. 2013-CR-3946 (Having Weapons While Under Disability)

### A. Factual and Procedural History

{¶ 71} On December 21, 2013, the police were dispatched to a particular address in an apartment complex on a report that a group of individuals were fighting in a parking lot. The dispatcher later relayed that gunshots had been fired and shell casings could be seen at the address. The shooter was described as a man with tattoos all over his face. Deputy Eversole responded to the location.

{¶ 72} When he arrived, Deputy Eversole observed Frazier, who matched the description of the shooter, and another individual near the address. As Eversole drove his cruiser into the apartment complex, Frazier and his companion ran. The deputy followed in his cruiser for a short distance and then followed Frazier on foot around a rectangular-shaped apartment building. Frazier continued to run, despite multiple commands by Eversole to stop.

{¶ 73} During the foot pursuit, Frazier stopped and knocked on the front door to

one of the apartments. When no one answered, Frazier ran around the building to the opposite side of the building. Following, Deputy Eversole observed Frazier place a semiautomatic handgun in a charcoal grill outside of one of the apartments. Eversole drew his weapon and ordered Frazier to the ground. Frazier complied. Frazier was handcuffed and placed under arrest. Frazier was later charged by complaint with carrying a concealed weapon and having weapons while under disability.

{¶ 74} In January 2014, Frazier was indicted for carrying a concealed weapon and having weapons while under disability for the December 21, 2013 incident. He later moved to suppress the evidence against him, arguing that he was arrested without probable cause.

{¶ 75} In March 2014, the State requested an order compelling Frazier to provide a sample of saliva to the Montgomery County Sheriff's Office, to be used for analysis at the Miami Valley Regional Crime Lab. The State indicated that a deputy had swabbed the firearm for touch DNA, and DNA analysis may be performed on the firearm upon submission of DNA standards from Frazier.

{¶ 76} A hearing on the suppression motion and the motion to compel was held on April 11, 2014, the same day as the suppression hearing in the robbery case. The sole witness was Deputy Eversole, who testified about his encounter with Frazier on December 21, 2013.

{¶ 77} After argument by counsel, the trial court overruled the motion to suppress, concluding that the deputy had a reasonable articulable suspicion that Frazier was engaged in criminal activity, based on the nature of the call and the caller's description of the shooter, i.e., an individual with tattoos over his face. This permitted the deputy to

stop and question Frazier. The court found that Frazier ran upon seeing the deputy, and the officer's pursuit of him was not a stop. During the pursuit, the deputy saw Frazier remove a semiautomatic weapon from his waist area and hide it in a grill. The court concluded that the deputy then had probable cause to believe that Frazier had committed the offense of carrying a concealed weapon. The court filed a written entry overruling the motion to suppress, citing the reasons articulated at the hearing.

{¶ 78} On November 7, 2014, Frazier pled guilty to having weapons while under disability. As part of the plea, the State dismissed the charge of carrying a concealed weapon. The trial court imposed 36 months in prison, to be served concurrently with the sentence in Case No. 2013-CR-3864 (the robbery case).

{¶ 79} Frazier appeals from his conviction, raising two assignments of error related to his conviction for having weapons while under disability.

### A. Ineffective Assistance of Counsel

{¶ 80} Frazier's third and fourth assignments both claim that he was deprived of the effective assistance of counsel. His third assignment of error asserts that his counsel rendered ineffective assistance when he advised Frazier "to plead guilty to the weapon under disability count, as opposed to no contest." The fourth assignment of error claims that counsel rendered ineffective assistance by failing "to maintain his objection to the State's motion seeking for Appellant to submit to a DNA sample."

{¶ 81} "A guilty plea waives the right to allege ineffective assistance of counsel, except to the extent that the errors caused the plea to be less than knowing and voluntary." *State v. Webb*, 2d Dist. Montgomery No. 26198, 2015-Ohio-553, ¶ 15. As stated by the United States Supreme Court in *Tollett v. Henderson*, 411 U.S. 258, 93

S.Ct. 1602, 36 L.Ed.2d 235 (1973):

> "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann [v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)]."

*Tollett* at 267, quoted by *State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992). "If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 266, quoting *McMann* at 771.

{¶ 82} We have required a defendant to establish the following when arguing that counsel was ineffective for allowing the defendant to plead guilty, as opposed to no contest: (1) the State would have agreed to a no-contest plea on the same terms; (2) counsel failed to advise the defendant that a no-contest plea, in contradistinction to a guilty plea, would preserve the pretrial issue for appeal; and (3) had defendant been so advised, the defendant would have rejected the plea offer. *See State v. McGlown*, 2d Dist. Montgomery No. 25434, 2013-Ohio-2762, ¶ 17. The record fails to establish any of these facts.

{¶ 83} The record does not contain a transcript of the plea hearing held on November 6, 2014, and Frazier does not cite to any portion of the record to demonstrate

that his plea was other than knowing, intelligent, and voluntary.   The plea form indicates that Frazier voluntarily agreed to plead guilty to having weapons while under disability, in exchange for which the State agreed to dismiss the charge of carrying a concealed weapon; the record reflects that there was no agreement on sentencing.   Frazier does not cite to anything in the record regarding the possibility of a no contest plea.   The mere fact that the defendant's guilty plea waived the ability to challenge pretrial rulings does not, without more, demonstrate deficient performance by counsel.

**{¶ 84}** Frazier claims that he was prejudiced by his counsel's advice to plead guilty, because he likely would have succeeded in an appeal from the trial court's suppression ruling.   Assuming, for sake of argument, that this claim is not waived by his guilty plea, we disagree.

**{¶ 85}** Deputy Eversole responded to a report that shots had been fired near a particular address, that shell casings were on the ground, and that the shooter was a man with tattoos all over his face.   When Deputy Eversole arrived, he saw Frazier, who matched the description of the shooter, and Frazier immediately ran.   While Eversole was chasing him, Frazier hid a semiautomatic handgun in a grill outside of an apartment. Frazier's actions in running from the deputy, removing the weapon from his trousers, and attempting to hide it in a grill created probable cause for the officer to believe that Frazier was unlawfully carrying a concealed weapon.   Eversole lawfully arrested Frazier and seized the weapon that Frazier had hidden in the grill.

**{¶ 86}** Frazier also asserts that he was prejudiced by his counsel's advice to plead guilty, because he is unable to challenge the trial court's order that he provide a DNA sample.   Although Frazier's guilty plea waived his ability to challenge the DNA order,

Frazier's conviction was not based on DNA evidence, and there is nothing in the record to indicate whether DNA testing was performed and the results of the testing, if any. Frazier has failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by his counsel's conduct.

{¶ 87} Frazier's third and fourth assignments of error are overruled.

## III. Conclusion

{¶ 88} The trial court's judgments will be affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Andrew T. French
Brock A. Schoenlein
Hon. Dennis J. Langer