[Cite as *State v. Short*, 2017-Ohio-7200.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27192 |
| | : | |
| v. | : | T.C. NO. 15-CRB-1597 |
| | : | |
| KENNETH SHORT | : | (Criminal Appeal from |
| | : |  Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____11ᵗʰ____ day of _____August_____, 2017.

. . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101, Chief Prosecutor, 335 W. Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

THADDEUS HOFFMEISTER, Atty. Reg. No. 0081977, University of Dayton Law Clinic, 300 College Park, Dayton, Ohio 45469
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

        **{¶ 1}** Kenneth Short appeals from his conviction after a bench trial in the Dayton

Municipal Court for soliciting, in violation of R.C. 2907.24(A)(1), a misdemeanor of the

third degree. Short was sentenced to ten days in jail, all of which were suspended. He was also sentenced to one year of community control with the requirements that he complete HIV testing and "Johns' School" and that he forfeit his seized cash totaling $130.

{¶ 2} Short appeals from his conviction, claiming that his conviction for soliciting was based on insufficient evidence. For the following reasons, the trial court's judgment will be affirmed.

## I. Record on Appeal

{¶ 3} On October 7, 2015, Short was tried to the court on orally-stipulated facts. Upon review of the record, we find it necessary to detail what the parties represented to the trial court and what is now properly before us for consideration.

{¶ 4} At the beginning of trial, the prosecutor indicated, and defense counsel agreed, that the evidence would be a joint stipulation as to what Detective Melanie Phelps-Powers's testimony would have been, as well as two joint exhibits: the police report and a printout of the text messages between Short and the detective. After that representation to the trial court, the prosecutor outlined the following facts.

{¶ 5} On March 18, 2015, the RANGE Task Force was conducting an undercover prostitution sting operation at the Marriott Hotel in Dayton. The day before, Detective Phelps-Powers had placed an advertisement on the Backpage website in the "sex for money" section of the website. During the morning of March 18, Phelps-Powers began to receive text messages from multiple individuals. One of those individuals was Short, who texted the undercover detective at 10:09 a.m. The pertinent conversation between Short and Phelps-Powers read:

Short:                    Hi sexy

| | |
|---|---|
| Detective: | Mornin |
| Short: | Free today? |
| Detective: | How long |
| Short: | I tell me[.]   U tell me |
| Detective: | What r u wantin |
| Short: | Bj [blow job]?   Hot hand job?   Hot sex? |
| Detective: | Hr 125, half 80 |
| Short: | Ok … where |

{¶ 6} Detective Phelps-Powers told Short to come to the Marriott, and the two texted each other photographs to identify themselves.   Short repeatedly asked the detective to send a picture of her breasts so that he would know that she was "not a cop;" the detective texted a photo of bare breasts, but the photo did not include a face.

{¶ 7} Short went to the Marriott and met Phelps-Powers in the lobby.   The two recognized each other from previous contacts, but were initially unable to recall from where.   They figured out that Short used to be a regular customer at a restaurant at which Phelps-Powers had worked.   As they walked down the hallway, Short told Phelps-Powers that "he doesn't do this" and that her "secret was safe with him."

{¶ 8} The two went to the hotel room where, unbeknownst to Short, the sting was going to occur.   When Phelps-Powers opened the door, other undercover detectives were (mistakenly) in the room.   Short saw the detectives, became scared, and fled, but he was apprehended after getting in his vehicle and trying to leave.   Short was brought back to the hotel room and identified.   When Short was apprehended, he had $130 and a condom in his possession.   Short was charged with soliciting.

{¶ 9} The police report included narrative discussions and property inventories regarding Phelps-Powers's interactions with Short, as well as two other individuals who were arrested as a result of the sting operation. (At trial, the parties did not discuss the factual circumstances regarding the other individuals.) Defense counsel questioned the prosecutor's mentioning of the condom, indicated that she (defense counsel) was stipulating to "whatever is stated in the police report and whatever is stated in the text messages." After reviewing the police report, the parties and the trial court agreed that a condom belonging to Short was listed in the property inventory portion of the police report.

{¶ 10} The trial court then asked defense counsel, "[Defense counsel,] everything that [the prosecutor] has just read into the record stipulation you agree to that, correct?" Defense counsel responded, "Yes[,] Your Honor." The court also asked defense counsel if there was anything that she would like to add. Defense counsel responded, "No[,] I believe that is the total content of what we had decided to stipulate to." The parties and the court then established a timetable for post-trial briefing. No Crim.R. 29 motion was made.

{¶ 11} In Short's post-trial memorandum, filed on November 6, 2015, Short argued that the State failed to prove that he had made an offer to have sex for hire. He argued that his actions were, at most, an acceptance of an offer made by the undercover officer. He emphasized that he never mentioned money to the undercover officer and never inquired as to whether the sexual activity would be for money or how much.

{¶ 12} Short's post-trial memorandum stated, in a footnote, that the "sex for money" description of the Backpage website was not included in the police report and

that the defense had stipulated only to the contents of the police report and text messages between Short and the detective. Short further indicated that, "[o]ff the record the State agreed that description would not be included for purposes of arguing the issues." (Short included the same footnote in his appellate brief.) The parties did not file a joint motion or other document with the trial court, seeking to modify the stipulations that had been made at trial.

{¶ 13} The statement of facts in the State's post-trial memorandum (and its appellate brief) indicated that Phelps-Powers had placed an ad on Backpage; it did not mention the section of the website in which the ad was placed. Although this perhaps demonstrated implicit agreement with footnote 1 of Short's post-trial memorandum, the State did not mention any agreement with Short to modify the stipulated facts.

{¶ 14} As to the sufficiency of the evidence against Short, the State argued to the trial court: "In response to the detective's open ended inquiry, the Defendant stated the specific sexual services that he was interested in receiving. The Defendant consummated his offer when he readily agreed to the price(s) quoted, and subsequently made contact with the detective at the predetermined time and location."

{¶ 15} Both Short and the State relied on *State v. West*, 2d Dist. Montgomery No. 22966, 2009-Ohio-6270, to support their arguments regarding the sufficiency of the evidence.

{¶ 16} The trial court found Short guilty of soliciting, in violation of R.C. 2907.24(A). It concluded that Short had committed the "actus reas of the offense," i.e., that he made an offer to have sex for hire and that the State had proven every element of soliciting beyond a reasonable doubt. The trial court's written verdict did not include a statement

of facts, and it is unclear whether the court considered the fact that the ad was placed in a "sex for money" section of the Backpage website.

{¶ 17} Upon our review of the record, Short stipulated at trial that Detective Phelps-Powers placed an advertisement in the "sex for money" section of Backpage. The prosecutor indicated, and defense counsel agreed, that the stipulation would include "what [the prosecutor] had expected the evidence to present here today from the State's witness[,] which would have been Detective Phelps-Powers," and the two exhibits. Defense counsel never objected at trial to the reference to the "sex for money" portion of Backpage, and she agreed with the prosecutor's statement of the facts.

{¶ 18} Where, as here, the trial court had not yet ruled on the matter, the trial court could have permitted the parties to "reopen" the case and to modify the stipulated facts. However, neither party properly requested a modification to the stipulated facts. The footnote in Short's post-trial memorandum indicates that the alleged agreement to amend the stipulations was made off-the-record, and the State did not join or agree to any motion seeking leave to modify the stipulations. (Even if we were to construe Short's footnote to constitute such a motion, the State did not expressly respond to the footnote in its post-trial memorandum.) Moreover, the trial court did not indicate that it would permit the stipulations to be modified. Accordingly, we find the alleged off-the-record agreement to modify the trial stipulations to be ineffective. Consequently, the record before us includes the stipulation that Detective Phelps-Powers placed an advertisement in the "sex for money" section of the Backpage website. *See State v. Davidson*, 3d Dist. Union No. 14-91-36, 1992 WL 81429 (Apr. 21, 1992) ("Unless set aside for good cause, a valid stipulation is binding upon the parties and the court.")

## II. Waiver of Challenge to Sufficiency of the Evidence

{¶ 19} As a preliminary matter, the State contends that Short waived his ability to challenge his conviction on sufficiency grounds by failing to make a Crim.R. 29(A) motion at trial.[1] The State argues that his appeal should be reviewed under a manifest weight standard.

{¶ 20} An argument based on the sufficiency of the evidence challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Under a sufficiency analysis, an appellate court does not make any determinations regarding the credibility of witnesses. *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998), citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d

---

[1] Although Short states in his appellate brief that the trial court "erred by both failing to grant Mr. Short's Rule 29 Motion and convicting him of solicitation," the trial transcript reflects that he did not make a Crim.R. 29 motion. Rather, after the prosecutor informed the trial court of the stipulated facts, the trial court set a schedule for post-trial briefing. In his post-trial memorandum, Short asserted that his actions did not "add up to" solicitation, but the memorandum does not reference Crim.R. 29.

259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 21} In contrast, when reviewing an argument challenging the weight of the evidence, the court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. " 'The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 22} Where an appellate court determines that a conviction is not against the manifest weight of the evidence, the conviction is necessarily based on legally sufficient evidence.   *State v. Million*, 2d Dist. Montgomery No. 24744, 2012-Ohio-1774, ¶ 23; *State v. Combs*, 2d Dist. Montgomery No. 19853, 2004-Ohio-2419, ¶ 12.   Where there is insufficient evidence to support a conviction, it will also necessarily be against the manifest weight of the evidence.

{¶ 23} In *State v. Hibbler*, 2d Dist. Clark No. 2001-CA-43, 2002-Ohio-4464, we stated, "When a criminal defendant fails to make a Rule 29 motion at trial, he waives his ability to challenge the sufficiency of the evidence on appeal."   *Id.* at ¶ 23, citing *State v. Roe,* 41 Ohio St. 3d 18, 535 N.E.2d 1351 (1989) and *State v. Knapp,* 2d Dist. Montgomery No. 18457, 2001 WL 62519 (Jan. 26, 2001).

{¶ 24} Since *Roe* and *Knapp* (the cases upon which *Hibbler* relied), the Ohio Supreme Court has stated that the failure to file a Crim.R. 29(A) motion during a trial does not waive an appellate argument concerning the sufficiency of the evidence.   *See State*

*v. Jones*, 91 Ohio St.3d 335, 346, 744 N.E.2d 1163 (2001); *State v. Carter*, 64 Ohio St.3d 218, 223, 594 N.E.2d 595 (1992). And, since *Hibbler*, we have repeatedly recognized that "a not-guilty plea alone is sufficient to preserve a sufficiency-of-the-evidence argument for appeal, even where the issue is not raised at trial." *State v. Osterfeld*, 2d Dist. Montgomery No. 20677, 2005-Ohio-3180, ¶ 8, citing *Jones* and *Carter*. *See, e.g.*, *State v. Hill*, 2d Dist. Montgomery No. 25274, 2013-Ohio-2016, ¶ 28; *State v. Rochowiak*, 2d Dist. Miami No. 2008 CA 12, 2009-Ohio-2550, ¶ 24.

{¶ 25} In *State v. Schuyler*, 2d Dist. Clark No. 11 CA 46, 2012-Ohio-2801, upon which the State relies, we held that the defendant's Crim.R. 29 motion asserting that the State failed to prove each element of the offenses was "too general to put the prosecutor and the court on notice of the venue issue." *Id.* at ¶ 17. We noted that venue is not a material element of any offense charged and that the venue and the elements of an offense are separate and distinct matters. *Id.*, citing *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1342 (1981). Because the defendant's motion did not adequately challenge the State's evidence of venue, we concluded that the trial court did not err in denying the defendant's Crim.R. 29 motion.

{¶ 26} Nothing in *Schuyler* supports the contention that a defendant must make a Crim.R. 29 motion in order to challenge on appeal the sufficiency of the State's evidence regarding the elements of the offense of which the defendant was convicted. Based on *Jones*, *Carter*, and our case law following those cases, we conclude that Short has not waived his sufficiency argument, despite his failure to make a Crim.R. 29 motion at trial.

### III. Defendant's Conviction for Soliciting

{¶ 27} R.C. 2907.24(A)(1) provides that "[n]o person shall solicit another who is

eighteen years of age or older to engage with such other person in sexual activity for hire."[2]  "Sexual activity for hire" means "an implicit or explicit agreement to provide sexual activity in exchange for anything of value paid to the person engaging in such sexual activity, to any person trafficking that person, or to any person associated with either such person."  R.C. 2907.24(E)(2).

{¶ 28} To establish a violation of R.C. 2907.24(A)(1), the State must prove (1) the accused's solicitation of another, (2) to engage in sexual activity, (3) for hire.  *West*, 2d Dist. Montgomery No. 22966, 2009-Ohio-6270, at ¶ 18.  "Solicitation requires the accused to have solicited, rather than agreed, to engage in sexual activity for hire."  *State v. Bennett*, 1st Dist. Hamilton Nos. C-140507, C-140508, 2015-Ohio-3246, ¶ 9, citing *State v. Swann*, 142 Ohio App.3d 88, 90, 753 N.E.2d 984 (1st Dist.2001).  "Solicit" is generally defined as "to entice, urge, lure or ask."  *E.g., State v. Eslich*, 5th Dist. Stark No. 2014CA67, 2014-Ohio-4640, ¶ 15; *State v. Renner*, 12th Dist. Clermont No. CA2010-06-042, 2011-Ohio-539, ¶ 10; *Swann* at 89.

{¶ 29} Short claims that he did not "solicit" Detective Phelps-Powers to engage in sexual activity for hire.  He relies upon *Swann*, *West*, and *State v. Howard*, 7 Ohio Misc.2d 45, 455 N.E.2d 29 (M.C. 1983), to support his argument that he did not make an offer to the undercover detective.  We have previously summarized *Swann* and *Howard*, as follows:

---

[2] The parties appear to agree that Short was convicted of R.C. 2907.24(A)(1).  Although the record repeatedly refers to the charged offenses as "2907.24A. M3," only R.C. 2907.24(A)(1) is a third-degree misdemeanor.  R.C. 2907.24(A)(2) and (3) were added in 2014 (*see* 2014 Am.Sub.H.B. 130) and address the solicitation of minors and persons with developmental disabilities; these offenses are felonies and facially inapplicable to the factual circumstances before us.

\* \* \* In *Swann*, a Cincinnati police officer was patrolling for evidence of prostitution. A second officer was hidden in the trunk of the unmarked car. Upon seeing Swann walking down the street, the officer pulled to the curb and engaged Swann in conversation. The officer then invited Swann into his car, where their discussion initially was not of a sexual nature. The officer then offered Swann crack or money for oral sex, and they finally agreed on a price of $15.00. At that point, the second officer in the trunk emerged and arrested Swann.

The First District determined that "Swann did not 'entice, urge, lure or ask' the officer for anything. She simply agreed to his suggestion." In reversing the trial court's judgment and discharging Swann from further prosecution, the First District relied upon *State v. Howard* (1983), 7 Ohio Misc.2d 45, 455 N.E.2d 29. In *Howard*, an undercover policeman approached Howard near the curb and asked him if he was "dating." Howard asked if the officer had any money, and the officer indicated he did, and he asked Howard what he would "do." Howard responded that he would "do" anything. The officer asked him if he would perform oral sex, and after Howard agreed and got into the car, he was arrested.

The court determined, "the defendant in this case did not entice, urge, lure or ask for money in return for sexual performance. What defendant did was agree to what the officer had suggested and as such he cannot be found guilty of soliciting, an offense unlike some other offenses where entrapment is raised, where the crime is in the asking."

*State v. Key*, 2d Dist. Montgomery No. 22609, 2009-Ohio-422, ¶ 12-14.

{¶ 30} The Tenth District discussed *Swann* and *Howard*, stating:

In determining that the defendants in *Swann* and *Howard* were not guilty of soliciting, the courts stated that, in a soliciting case, the crime is in the asking. However, these courts did not limit soliciting cases to situations where a defendant explicitly asks for sexual activity for hire, as appellant suggests. Instead, the courts in *Swann* and *Howard* recognized that soliciting may also involve a defendant enticing, urging or luring another to engage in sex for hire. Likewise, the courts in *Swann* and *Howard* did not exonerate the defendants on the basis that the undercover law enforcement officers, and not the defendants, suggested the particular sexual activity and price. Rather, these courts concluded that the defendants were not guilty of soliciting because they merely agreed to the law enforcement officers' advances and did nothing more that rose to the level of enticing, urging, luring or asking the officers to engage in sex for hire.

(Citations omitted.) *Columbus v. Myles*, 10th Dist. Franklin No. 04AP-1255, 2005-Ohio-3933, ¶ 22-24.

{¶ 31} In *West*, 2d Dist. Montgomery No. 22966, 2009-Ohio-6270, a case from this appellate district, a Vice Crime Unit detective drove to a busy intersection where West was speaking with the drivers of vehicles that had stopped. When the undercover detective approached the intersection, West made a hitchhiking signal, the detective stopped, and West got into his car. After they exchanged first names, the detective told West that he was "just killing time," and West asked the detective if he would like "a great

blow job." The detective responded, "sure," and asked what she needed for that. West did not reply, but rubbed the detective's penis on the outside of his pants. As they drove away, the detective again asked "what she needed." West replied that she wanted a new pair of shoes that cost $24, but she would settle for $20. The detective drove to a bank where an ATM was located. Once there, West was arrested by another officer who had observed and followed them.

{¶ 32} In affirming West's conviction for soliciting, we rejected the contention that a person accused of soliciting must not only offer to engage in sexual activity for hire, but must also have "initiated an offer that was complete in those terms." *West* at ¶ 21. We stated: "The conduct that R.C. 2907.24 prohibits is the offer. Whether it is done in the form of an initial offer, a counter offer, or in response to an open inquiry, is immaterial. * * * West's request to be paid $20 demonstrates that her offer to engage in sexual activity was to do so 'for hire.' " *Id.* at ¶ 22.

{¶ 33} We find the situation before us to be more similar to *Bennett*, 1st Dist. Hamilton Nos. C-140507, C-140508, 2015-Ohio-3246. There, the defendant drove up to an undercover officer, who was standing on the sidewalk, and asked if she was "working." The defendant stated that he was looking for a "regular," and indicated that he was interested in engaging in sexual activities with the officer. The defendant asked the officer what she charged and stated that he was not expecting any "freebies." The officer provided a price to which defendant agreed. In affirming the conviction for soliciting, the First District stated, "The fact that the officer was the first one to state a dollar amount does not negate Bennett's role in the exchange." *Id.* at ¶ 11.

{¶ 34} Here, it was Phelps-Powers, not Short, who indicated the dollar amount for

their encounter, but we cannot reasonably characterize Short's conduct as merely acquiescing in the detective's advances. Detective Phelps-Powers placed an advertisement in the "sex for money" section of the Backpage website as part of an undercover sting operation. Although the specific content of that ad is not in the record, there is nothing in the record to indicate that the advertisement itself was an offer of sexual activity for hire, and the police report reflects that, in response to the Backpage ad, the detective received multiple texts from men.

{¶ 35} At 10:09 a.m., Short initiated contact with the undercover detective concerning sexual activity. In Short's text messages to the undercover detective, he asked if she were available that day. When the detective asked "how long," Short had responded, "U tell me." Short suggested specific sexual activity in which they could engage. After the officer texted back her hourly and half-hour rate, Short agreed to the price and asked where they would meet; he met with the undercover detective at the agreed-upon hotel. Short had sought assurances from Phelps-Powers that she was not a police officer.

{¶ 36} Construing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence that Short solicited the undercover detective to engage for hire. In response to an advertisement in a "sex for money" section of a website, Short contacted Phelps-Powers and identified specific sexual acts that he wanted from the undercover detective. Although the detective named the specific cost for those (sex) acts, there was sufficient evidence that Short was aware when he contacted Phelps-Powers that monetary payment was expected (for hire). The State presented sufficient evidence that Short committed soliciting.

**{¶ 37}** Even if we were to accept the parties' proposed modification to the trial stipulations and to disregard that fact that the advertisement was placed in the "sex for money" section of Backpage, we would still conclude that the State presented sufficient evidence of soliciting. Although Short did not explicitly ask the detective to engage in sex in exchange for money and the detective suggested the price, the evidence supports a conclusion that Short engaged in "enticing, urging, and luring" conduct regarding sexual activity for hire.

**{¶ 38}** Short's assignment of error is overruled.

### IV. Conclusion

**{¶ 39}** The trial court's judgment will be affirmed.

. . . . . . . . . . . .

HALL, P.J. and WELBAUM, J., concur.

Copies mailed to:

Stephanie L. Cook
Thaddeus Hoffmeister
Hon. Daniel G. Gehres