[Cite as *State v. Peterson*, 2021-Ohio-3947.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                                      :
                                                   :
    Plaintiff-Appellee                         :    Appellate Case No. 29061
                                                   :
v.                                                 :    Trial Court Case No. 2020-CRB-2367
                                                   :
RICHARD PETERSON                                   :    (Criminal Appeal from
                                                   :    Municipal Court)
    Defendant-Appellant                        :
                                                   :

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of November, 2021.

. . . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101 by AMY B. MUSTO, Atty. Reg. No. 0071514, Assistant Prosecuting Attorney, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

GLENDA A. SMITH, Atty. Reg. No. 0070738, P.O. Box 15353, Wyoming, Ohio 45215
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Richard Peterson was convicted after a bench trial in the Dayton Municipal Court of one count of menacing and two counts of domestic violence. On appeal, Peterson claims that the trial court erred in denying his Crim.R. 29 motion regarding the menacing charge, that his convictions were based on insufficient evidence and against the manifest weight of the evidence, that certain offenses should have merged as allied offenses of similar import, and that his counsel rendered ineffective assistance by failing to raise allied offenses at sentencing.

{¶ 2} For the following reasons, the trial court's judgment will be affirmed in part and reversed in part, and the matter will be remanded for merger of the menacing and domestic violence (R.C. 2919.25(C)) charges.

## I. Facts and Procedural History

{¶ 3} Peterson was charged with five offenses following an incident with his ex-fiancée on August 1, 2020: (1) domestic violence, in violation of R.C. 2919.25(A), a misdemeanor of the first degree, (2) domestic violence, in violation of R.C. 2919.25(C), a misdemeanor of the fourth degree, (3) assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree, (4) aggravated menacing, in violation of R.C. 2903.21(A), a misdemeanor of the first degree, and (5) menacing, a violation of R.C. 2903.22, a misdemeanor of the fourth degree.

{¶ 4} The matter proceeded to a bench trial, during which the State presented the testimony of the complainant, T.O., and Officer Michael Pena, who responded to the residence following the incident. Their testimony established the following facts.

{¶ 5} Peterson and T.O. were romantically involved for 15 years and have two

children. The couple resided together throughout their relationship, and in 2020, they lived at a residence on Kenwood Avenue in Dayton.

{¶ 6} In July 2020, the relationship was ending – the two were sleeping separately in the house, and as of August 1, T.O. had not spoken to Peterson for approximately two and a half weeks. Peterson had packed his belongings and was preparing to move from the home.

{¶ 7} On August 1, 2020, Peterson left the house "pretty early" and returned in the afternoon. When he came home, he told the couple's daughter, age 11, that she would need to stay with her sister (Peterson's child from another relationship) because he was having the power turned off at the house. T.O. testified that Peterson previously had threatened to shut off power to the home and, in response, she had contacted the gas and power companies a couple weeks before to have the accounts switched to her name.

{¶ 8} Peterson went downstairs to the basement and turned the breaker off. After he came back upstairs, T.O. went into the basement and turned it back on. Peterson returned to the basement to turn the breaker off again, telling T.O., "You're not gonna have power in this house in my name." T.O. responded, "It's not in your name. I had everything taken care of." The two went back and forth with the breaker.

{¶ 9} As T.O. and Peterson went back upstairs, Peterson accused her of lying about the power account. When they reached the dining room, Peterson walked in front of T.O. and punched her once in the stomach. T.O. held her stomach and doubled over from the impact. Peterson then lifted a wooden dining room chair and said, "I'll hit you again. I'll hit you again." T.O. testified that she believed Peterson was going to hit her with the chair and feared he would cause her serious harm. Peterson, however, put the

chair back down. At that point, T.O. called the police. (T.O. testified that, throughout the encounter with Peterson, she was on the phone with her then long-time friend, now boyfriend, and she ended her call with him to contact the police.)

{¶ 10} Peterson and T.O. were in the living room as T.O. spoke with the dispatcher. A neighbor, who had come over at their 15-year-old child's request, tried to calm Peterson down. When the neighbor left, T.O. followed her onto the porch and waited there for the police.

{¶ 11} Officer Pena responded to the Kenwood residence on a report of a domestic incident and found T.O. sitting on front porch of the residence; Peterson was inside the house. The officer described T.O. as "highly upset and a little bit agitated and wanted to inform me as to what had happened almost immediately as I arrived on scene." T.O. reported to Officer Pena that Peterson had struck her in the stomach during an argument that they had over the power and had threatened her with a chair. Pena did not notice any injuries and did not recall hearing T.O. complain of pain. T.O. did not seek medical attention as a result of being punched, but she testified the punch was painful.

{¶ 12} Officer Pena then spoke with Peterson, who also was upset. The officer testified that Peterson "was explaining to me the situation why he was upset. And it was all about the power situation."

{¶ 13} The police placed Peterson under arrest for domestic violence. T.O. testified that when Peterson was being placed in a cruiser, he threatened her in front of the police officers, saying "That's okay. Because when I get out, she's gonna die." T.O. acknowledged that no one else, including the police officers, heard that statement. Officer Pena testified that Peterson was very upset to be arrested in front of his neighbors,

and he (the officer) would have noted in his report if he had heard Peterson threaten to kill T.O.

{¶ 14} After the trial court denied Peterson's Crim.R. 29(A) motion for an acquittal, Peterson testified on his own behalf. He denied punching T.O., "putting [his] hands on her," threatening her, or threatening to hit her with a chair. On cross-examination, Peterson admitted that he had grabbed a chair, but stated that it never left the ground. Peterson indicated that he heard T.O.'s conversation with the police dispatcher and that the dispatcher should have heard him screaming that she was lying.

{¶ 15} The trial court found Peterson guilty of assault, menacing, and both counts of domestic violence, but not guilty of aggravated menacing. At sentencing, the trial court merged the assault with a domestic violence offense and sentenced Peterson to an aggregate term of 180 days in jail, with 174 days suspended and credit for six days served, a $100 fine, and seven months of basic supervision with completion of the Stop the Violence program. The trial court stayed the sentence pending appeal.

{¶ 16} Peterson appeals from his convictions, raising three assignments of error.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 17} In his first assignment of error, Peterson claims that the trial court erred in overruling his Crim.R. 29 motion on the menacing charge and in convicting him of all charges. Peterson appears to challenge his convictions as based on insufficient evidence and as against the manifest weight of the evidence.

{¶ 18} Crim.R. 29(A) requires the trial court "on motion of a defendant or on its own motion, after the evidence on either side is closed, [to] order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if

the evidence is insufficient to sustain a conviction of such offense or offenses." When reviewing the denial of a Crim.R. 29(A) motion, an appellate court applies the same standard as is used to review a sufficiency of the evidence claim. *E.g., State v. Powell*, 2d Dist. Montgomery No. 27951, 2018-Ohio-4693, ¶ 22. In conducting our review, we may consider only the evidence available to the trial court when the motion was made. *Id.*, citing *State v. Sheppeard*, 2d Dist. Clark No. 2012 CA 27, 2013-Ohio-812, ¶ 51.

{¶ 19} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 20} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. When reviewing an argument challenging the weight of the evidence, an appellate court may not substitute its view for that of the trier of fact. Rather, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the factfinder clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 21} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 22} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *Thompkins* at 386. However, where an appellate court determines that a conviction is not against the manifest weight of the evidence, the conviction is necessarily based on legally sufficient evidence. *State v. McLoughlin*, 2d Dist. Champaign No. 2017-CA-22, 2018-Ohio-2426, ¶ 8; *State v. Million*, 2d Dist. Montgomery No. 24744, 2012-Ohio-1774, ¶ 23.

{¶ 23} Peterson was found guilty of four charges: two counts of domestic violence, menacing, and assault. The domestic violence statute provides, in relevant part:

(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

* * *

(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical

harm to the family or household member.

R.C. 2919.25.   The relevant assault statute, R.C. 2903.13(A), states: "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Finally, the menacing statute provides, in relevant part: "(A) No person shall knowingly cause another to believe that the offender will cause physical harm to the person * * *." R.C. 2903.22(A).

{¶ 24} "Physical harm to persons" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."   R.C. 2901.01(A)(3).   We have noted that there is "no requirement that pain must be demonstrated by an outward physical manifestation in order to constitute physical harm."   *State v. Karns*, 2d Dist. Greene No. 2020-CA-35, 2021-Ohio-1836, ¶ 38, quoting *State v. Holloman*, 10th Dist. Franklin No. 06AP-01, 2007-Ohio-840, ¶ 22 and *State v. Lohr*, 9th Dist. Lorain No. 03CA008265, 2004-Ohio-1609, ¶ 6.   Rather, "pain of sufficient intensity" can constitute "physical harm" for purposes of R.C. 2901.01(A)(3). *State v. Taylor*, 2d Dist. Montgomery No. 27731, 2018-Ohio-4048, ¶ 16, citing *State v. Hill*, 2d Dist. Montgomery No. 20678, 2005-Ohio-3701, ¶ 34 (painful "punch to the gut" was sufficient to satisfy the "physical harm" element of assault).

{¶ 25} A person acts "knowingly" when he or she is aware that his or her conduct will probably cause a certain result or will probably be of a certain nature.   R.C. 2901.22(B); *State v. Hemming*, 2d Dist. Montgomery No. 28738, 2021-Ohio-971, ¶ 24.

{¶ 26} Construing the State's evidence in the light most favorable to it, the trial court did not err in denying Peterson's Crim.R. 29(A) motion on the menacing charge. T.O. testified that, immediately after punching her in the stomach, Peterson picked up a

dining room chair and threatened to hit her with it. T.O. expressly stated that she believed that Peterson would hit her with the chair and that she was fearful that he would cause her physical harm. T.O.'s testimony, if believed, was sufficient to prove that Peterson knowingly caused T.O. to believe that he would cause her physical harm.

{¶ 27} Peterson's conviction for menacing also was not against the manifest weight of the evidence. Although Peterson denied raising a dining room chair, threatening T.O., or threatening to hit her, it was the province of the trial court, as the trier of fact, to evaluate Peterson's and the other witnesses' credibility. In reaching its verdict, the court was free to believe all, part, or none of Peterson's testimony. On the record before us, we cannot conclude that the trial court lost its way when it credited T.O.'s version of events and found Peterson guilty of menacing.

{¶ 28} The trial court's verdicts on the domestic violence and assault charges similarly were based on sufficient evidence and were not against the manifest weight of the evidence. T.O. testified that Peterson punched her in the stomach, causing her to grab her stomach and double over. Although T.O. did not seek medical attention due to the punch, she testified that the punch was painful. T.O.'s testimony supported a conclusion that Peterson caused her physical harm, within the meaning of R.C. 2901.01(A)(3). Although Peterson denied any physical contact with T.O., the trial court was free to credit T.O.'s testimony and reasonably found him guilty of assault.

{¶ 29} Both T.O.'s and Peterson's testimony established that the two had been a couple for 15 years, had two children together, and shared a household throughout their relationship. T.O., therefore, was a "family or household member" for purposes of the domestic violence statute. See R.C. 2919.25(F)(1)(a) (defining "family or household

member" as "a person living as a spouse"); R.C. 2919.25(F)(b) (defining "family or household member" as the natural parent of the offender's child). With this additional element, the trial court did not lose its way in finding Peterson guilty of domestic violence, in violation of R.C. 2919.25(A).

{¶ 30} In addition, as with the menacing charge, the trial court reasonably found Peterson guilty of domestic violence, in violation of R.C. 2919.25(C). Again, T.O. testified that, immediately after punching her, Peterson threatened to hit her with a wooden dining room chair. T.O. testified that she believed that Peterson would hit her with the chair and would cause her physical harm. This evidence, if believed, was sufficient to show that, by threat of force, Peterson knowingly caused T.O. to believe that he would cause imminent physical harm to her, a "family or household member." The trial court was free to credit T.O.'s testimony over Peterson's and to find him guilty.

{¶ 31} Peterson's first assignment of error is overruled.

### III. Allied Offenses of Similar Import

{¶ 32} In his second assignment of error, Peterson claims that the trial court erred in failing to merge allied offenses of similar import. Specifically, Peterson asserts that the trial court should have merged (1) assault with domestic violence (R.C. 2919.25(A)), and (2) menacing with domestic violence (R.C. 2919.25(C)).

{¶ 33} The record reflects that the assault charge was, in fact, merged with domestic violence. At sentencing, the trial court asked the prosecutor if she was "going to make an election," to which the prosecutor responded, "Uh, Your Honor, the D.V." The court then proceeded to sentence Peterson on the two domestic violence charges and the menacing charge only. In its written judgment entry, the court noted for the assault

charge that the State had elected to proceed on the domestic violence charge. Peterson's claim that the trial court should have merged assault with domestic violence lacks merit.

{¶ 34} With respect to the menacing charge, the State "agrees and concedes" that the menacing charge and domestic violence charge (R.C. 2919.25(C)) are allied offenses and should have been merged for sentencing "with the [State] electing the Domestic Violence 2919.25C charge." We likewise agree. Peterson's claim that the trial court should have merged menacing and domestic violence, in violation of R.C. 2919.25(C), is sustained.

### IV. Ineffective Assistance of Counsel

{¶ 35} In his third assignment of error, Peterson claims that her counsel rendered ineffective assistance by failing to raise allied offenses of similar import in the trial court. Because the trial court merged the assault charge with the domestic violence under R.C. 2919.25(A) and the State has conceded that the menacing charge should be merged with the domestic violence under R.C. 2919.25(C), we conclude that any alleged deficiency in counsel's failure to address allied offenses at sentencing is now moot.

### V. Conclusion

{¶ 36} The trial court's judgment will be affirmed in part and reversed in part, and the matter will be remanded for merger of the menacing and domestic violence (R.C. 2919.25(C)) charges.

. . . . . . . . . . . . .

TUCKER, P. J. and WELBAUM, J., concur.

Copies sent to:

Stephanie L. Cook
Amy B. Musto
Andrew D. Sexton
Glenda A. Smith
Hon. Mia Wortham Spells